UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Thomas Howryletz,                                    :

               Plaintiff,                         :

          - against -                              :

Mount Ararat Cemetery, Inc.,                         :

             Defendant.                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**20 Civ. 5756**

**COMPLAINT**

**JURY TRIAL DEMANDED**

## <u>NATURE OF THE ACTION</u>

1.      This is a case about a cemetery that unlawfully terminated its General Manager, Thomas Howryletz, employed for almost ten years, in retaliation for his protected complaints about conduct that he believed was illegal, fraudulent and in violation of the cemetery's policies.

2.      The legal claims in this lawsuit include, without limitation, unlawful retaliation in violation of: (a) the Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. § 201 *et seq.*, including Section 215(a)(3) of the FLSA; (b) the New York State Labor Law (the "Labor Law" or "NYLL"), including Section 215 of the Labor Law; and (c) the New York Non-Profit Revitalization Act of 2013 (the "Revitalization Act"). *See, e.g.*, 29 U.S.C. §§ 215(a)(3), 216(b), 255(a), 260; N.Y. Lab. L. § 215; N.Y. CLS N-PCL § 715-b.

3.      The legal claims also include breach of contract and promissory estoppel.

4.      The FLSA and Labor Law broadly prohibit an employer from retaliating against an employee for making a complaint, whether oral or written, internal or external, regarding rights provided by those laws. *See, e.g.*, *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011); *Greathouse v. JHS Security, Inc.*, 784 F.3d 105 (2015).

5.    The Second Circuit has "repeatedly affirmed that the remedial nature of the FLSA warrants an expansive interpretation of its provisions so that they will have the widest possible impact in the national economy." *Greathouse,* 784 F.3d at 113-14 (internal quotation marks omitted).

6.    The Revitalization Act provides additional protections for employees of nonprofit organizations, including without limitation protection against retaliation for whistleblowing, and creates an implied private right of action.  *See, e.g.,* N.Y. CLS N-PCL § 715-b.

## THE PARTIES, JURISDICTION AND VENUE

7.    Plaintiff Thomas Howryletz ("Plaintiff") is an adult individual residing in New York.

8.    Defendant Mount Ararat Cemetery, Inc.  ("Defendant," "MAC" or the "Cemetery") is a domestic not-for-profit corporation incorporated under the laws of the State of New York, doing business in Suffolk County, New York, and having a principal place of business and/or address in 1165 NY-109, Lindenhurst, NY 11757.

9.    This Court has jurisdiction over Plaintiff's claims pursuant to the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331, 1367(a), 2201, 2202.

10.    Venue is proper in this district pursuant to the FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. § 1391.

## DEFENDANT'S STRUCTURE

11.    MAC is an entity, situated on 80+ acres of land in Long Island, that provides various cemetery services.

12.    MAC engages in activities performed for a business purpose.

-2-

13.     MAC's activities include without limitation selling burial plots, providing burial services, and providing other services for which fees and charges are imposed.

14.     According to MAC's website, MAC is continuously engaging in such activities: "Mount Ararat has a limited number of graves still for sale.  For information about the cost and availability of graves, you may contact our office...." and "Our prices for graves are registered with the New York State Cemetery Board...." http://www.mountararatcemetery.com/

15.     Upon information and belief, MAC, through its business activities, has annual revenue exceeding $3,000,000 and has amassed net assets exceeding $30,000,000.

16.     MAC is required to file with the IRS, on an annual basis, a Return of Organization Exempt From Income Tax ("Form 990").

17.     MAC is an employer under federal, state and local law.

18.     MAC is required to comply with federal, state and local law.

19.     MAC is required to comply with the FLSA and the Labor Law.

20.     Adelaide Cote ("Cote") is President of MAC.

21.     Upon information and belief, Cote is the highest paid employee of MAC, with a salary exceeding $200,000.

22.     Cote has authority to hire and fire employees of MAC and has exercised that authority.

23.     For example, Cote hired her own son, Christopher Cote ("Christopher"), to work as Field Manager/Superintendent at MAC, and upon information and belief, his salary is at least $100,000.

24.     MAC has a Board of Directors ("Board").

25.     The Board has oversight authority over MAC.

26.     The members of the Board are referred to as Directors.

27.     Gerald Hass ("Hass") is Chairman of the Board and is a retired President of MAC.

## PLAINTIFF'S EMPLOYMENT

28.     Plaintiff is a former employee of MAC.

29.     Plaintiff was employed by MAC from about July 2010 through June 1, 2020, when his employment was unlawfully terminated.

30.     Plaintiff's final position was General Manager and he also held an officer position with MAC, specifically, Secretary.

31.     Plaintiff reported to Cote.

32.     At all times, Plaintiff was qualified for his position.

## THE MAC WHISTLEBLOWER POLICY

33.     On or about December 18, 2013, The New York Non-Profit Revitalization Act of 2013 ("Revitalization Act") was enacted.

34.     The Revitalization Act states in part that "(a) Except as provided in paragraph (c) of this section, the board of every corporation that has twenty or more employees and in the prior fiscal year had annual revenue in excess of one million dollars shall adopt, and oversee the implementation of, and compliance with, a whistleblower policy to protect from retaliation persons who report suspected improper conduct. Such policy shall provide that no director, officer, key person, employee or volunteer of a corporation who in good faith reports any action or suspected action taken by or within the corporation that is illegal, fraudulent or in violation of any adopted policy of the corporation shall suffer intimidation, harassment, discrimination or

other retaliation or, in the case of employees, adverse employment consequence."  N.Y. CLS

N-PCL § 715-b.

35.     MAC was covered by and required to comply with the Revitalization Act.

36.     In response to the Revitalization Act, and in or about 2014, MAC issued a

whistleblower policy to staff (the "MAC Whistleblower Policy").

37.     The MAC Whistleblower Policy stated in part:

> Officers, directors and employees are required, and all other persons are
> strongly encouraged, to report any improper conduct to the Cemetery.
> Improper conduct shall include, but not be limited to, conduct that is
> illegal, fraudulent or in violation of any adopted policy of the Cemetery.
> No officer, director or employee who in good faith reports any suspected
> improper conduct, as defined above, shall suffer intimidation, harassment,
> discrimination, adverse employment action or other retaliation.  Such
> report should be directed to the President or another officer.  Retaliation
> against anyone who supplies such information in good faith will not be
> tolerated....
>
> A COPY OF THIS POLICY AND ANY AMENDMENTS TO THIS
> POLICY SHALL BE DISTRIBUTED TO ALL OFFICERS, DIRECTORS
> AND EMPLOYEES.

38.     MAC intended the MAC Whistleblower Policy to be binding upon MAC and its

employees.

39.     MAC intended its employees to rely upon the MAC Whistleblower Policy.

40.     Cote gave a copy of the MAC Whistleblower Policy to Plaintiff.

41.     MAC intended Plaintiff to rely upon the MAC Whistleblower Policy and he did

so.

## FALL 2019 BOARD VACANCY

42.     In the Fall of 2019, a Director position on the Board became vacant.

43.     The Board advised Plaintiff of that vacancy.

44.     The Board advised Plaintiff that the Board would have a meeting on December 2, 2019 and intended to elect Plaintiff to fill that vacant Director position on the Board.

45.     The Board advised Plaintiff that it expected Cote to retire from MAC by the end of May 2020 and, at that time, the Board intended to promote Plaintiff to President of MAC.

46.     The Board made these statements to Plaintiff because of Plaintiff's track record of outstanding job performance and dedication to the organization.

47.     Plaintiff advised the Board that he would be pleased to join the Board as a Director and would be pleased to succeed Cote as the next President of MAC.

48.     Upon information and belief, on November 27, 2019, at about 12:22 p.m., Cote advised one or more Board members that Plaintiff was a "good choice" to fill the vacant Director position on the Board and that she would support his nomination for that position.

**PLAINTIFF'S NOVEMBER 2019 PROTECTED COMPLAINTS TO COTE**

49.     During Plaintiff's employment, he observed various unlawful conduct, improper conduct and/or mismanagement by Cote and/or Cote's son Christopher Cote, and conduct that Plaintiff believed was illegal, fraudulent and in violation of MAC policies.

50.     In the afternoon of November 27, 2019, *after* Cote expressed to the Board her support for Plaintiff's nomination to join the Board, Cote met with Plaintiff.

51.     During that meeting, Plaintiff made one or more protected complaints about conduct that Plaintiff believed was illegal, fraudulent and in violation of MAC policies.

52.     Significantly, Plaintiff complained about inaccurate payroll records of staff, failure to pay earned wages/overtime to staff, and unlawful denial of breaks to staff.

53.     Plaintiff also gave a written list of items to Cote.

54.     In that written list, Plaintiff alleged that Christopher Cote, who had responsibility for payroll of the outside hourly staff:

> - Always mistakes with payroll (he doesn't keep accurate records and forgets to pay the men for vacation, holidays and OT)

55.     Plaintiff also complained that Christopher Cote used MAC's assets/facilities for private or personal business use, in contradiction of MAC's not-for-profit status.

56.     Plaintiff also complained that MAC paid Christopher Cote for time not worked and/or overpaid him.

57.     Plaintiff also complained about other issues.

58.     Plaintiff's complaint alleged violations of the FLSA and/or the Labor Law and was a legally protected activity under the FLSA, the Labor Law, the Revitalization Act and the MAC Whistleblower Policy.

59.     For example, it is unlawful for an employer to fail to:  (a) pay an employee the wages earned; (b) pay an employee overtime pay due and owing to the employee; and (c) maintain contemporaneous, true, and accurate payroll records.  *See, e.g.*, 29 U.S.C. §§ 206, 207; Labor Law §§ 190 et seq., 195, 650 et seq.; 12 N.Y.C.R.R. Part 142.

60.     Plaintiff also believed that the conduct he complained of was illegal and/or fraudulent and constituted improper conduct under the MAC Whistleblower Policy.

61.     Cote did not deny that Plaintiff's complaints were accurate.

62.     Instead, Cote retaliated against Plaintiff and threatened Plaintiff to deter him from pursuing his protected complaints.

63.     On November 29, 2019, Cote told Plaintiff that she was "really upset" with him.

64.     On November 29, 2019, Cote told Plaintiff that she would not nominate him for the vacant Director position at the upcoming Board meeting.

65.     On November 29, 2019, Cote told Plaintiff that, at the upcoming Board meeting, she would seek to delay a vote by the Board as to filling the vacant Director position.

## COTE'S DECEMBER 2019 THREATS TO PLAINTIFF

66.     On December 2, 2019, the Board held a meeting and nominated and elected Plaintiff to join the Board as a Director.

67.     After the meeting, Cote told Plaintiff that he had been placed on the Board.

68.     However, Cote also threatened Plaintiff to deter him from pursuing his protected complaints.

69.     For example, Cote told Plaintiff that his position on the Board was temporary.

70.     For example, Cote told Plaintiff that he would have to "prove" himself.

71.     For example, Cote told Plaintiff that his position on the Board was subject to a vote for re-election in six months, at the meeting of the Board scheduled for late May 2020.

72.     For example, Cote told Plaintiff that she paid him a "great salary" and he would have a "really difficult time" finding a job elsewhere that paid as well.

73.     For example, Cote told Plaintiff that he should not expect to receive his standard annual increase of 5%.

74.     After December 2, 2019, Cote continued to threaten Plaintiff.

75.     On or about December 3, 2019, Cote summoned Plaintiff to her office.

76.     Cote made it clear to Plaintiff that MAC would not take any remedial action in response to his protected complaints and threatened Plaintiff's employment to deter him from

pursuing those complaints.

77.     Cote told Plaintiff words to the effect of "you have a loving wife and kids at home and poor Chris has no one but his sickly father and he's always taking care of him...he doesn't have the good life you have so you should cut Chris some slack."

78.     Cote "cut Chris some slack" by, among other items, giving him a raise.

79.     Cote told Plaintiff that she was not going to retire as President of MAC.

80.     Cote told Plaintiff that Cote and Hass will be on the Board until they die.

81.     Cote told Plaintiff that Cote and Hass expected Plaintiff to be aligned with their interests and vote with them on matters presented to the Board.

**PLAINTIFF'S JANUARY 2020 PROTECTED COMPLAINTS**

82.     Notwithstanding Cote's threats, Plaintiff did not drop his protected complaints.

83.     Rather, Plaintiff, who was now a Director and member of the Board, filed another protected complaint in late January 2020 in connection with an annual audit.

84.     Specifically, in late January 2020, Plaintiff made a verbal protected complaint to Schulman Lobel LLP ("Schulman"), MAC's accountants.

85.     On January 26, 2020, Plaintiff followed up on his verbal complaint by submitting a written complaint to Schulman.

86.     Plaintiff's January 2020 protected complaint reiterated and expanded upon the protected complaints that he had made in November 2019, and also reported, among other items, that Cote had created a "toxic work environment."

87.     According to the website of Schulman, "Schulman Lobel is a unique accounting and consulting firm offering financial and management strategies to individuals and businesses

throughout the United States and internationally."

88.     Upon information and belief, MAC pays Schulman more than $40,000 per year in accounting fees.

89.     On January 29, 2020, Schulman forwarded a copy of Plaintiff's written complaint to the Board's "Audit Committee."

90.     The Board's Audit Committee was comprised of two Directors, Mark Stempa and Robert A. Zirinsky.

91.     Stempa and Zirinsky received a copy of Plaintiff's written complaint.

## THE ALLEGED INVESTIGATION OF PLAINTIFF'S PROTECTED COMPLAINTS BY A LAW FIRM THAT DEFENDS EMPLOYERS

92.     The Board's Audit Committee forwarded Plaintiff's January 2020 written complaint to Farrell Fritz, P.C. ("Farrell").

93.     Farrell is a law firm that represents employers *and* defends employers against claims by employees.

94.     Upon information and belief, Farrell assigned the matter to Domenique Camacho Moran ("Ms. Moran"), an attorney with that law firm.

95.     Ms. Moran represents employers in employment matters.

96.     According to Farrell's website, Ms. Moran "represents employers—from startups to large corporations—in connection with all types of employment litigation...."

97.     In March 2020, Plaintiff was summoned to a meeting with Ms. Moran at Farrell's law offices.

98.     Plaintiff complied with the directive and appeared at Farrell's law offices.

99.     Ms. Moran identified herself as an attorney.

100.    Plaintiff met with Ms. Moran.

101.    During that meeting, Plaintiff reiterated and expanded upon his protected complaints.

102.    After the meeting, Plaintiff provided additional information and documents to Ms. Moran further supporting his complaints.

103.    On or about May 21, 2020, Farrell submitted to the Board's Audit Committee a memorandum (the "Memorandum").

104.    The Board's Audit Committee distributed copies of the Memorandum to all members of the Board, including without limitation Cote and Plaintiff.

105.    Plaintiff reviewed the Memorandum.

106.    The Memorandum found, in essence, that MAC had failed to maintain complete time records for non-exempt employees.

107.    The Memorandum found, in essence, that Christopher Cote had been paid for time not worked and there was no documentation confirming his entitlement to those payments.

108.    The Memorandum found, in essence, that Cote had raised negative criticism of Plaintiff and her criticism of Plaintiff was directly related to his complaints.

## MAC'S UNLAWFUL RETALIATION AGAINST PLAINTIFF

109.    After Defendant received the Memorandum, Defendant escalated the unlawful conduct against Plaintiff and unlawfully retaliated against him.

110.    On May 22, 2020, Cote telephoned Plaintiff.

111.    Cote told Plaintiff that he was going to be removed from the Board at the upcoming Board meeting.

112.     On June 1, 2020, Plaintiff received a telephone call from Cote and Richard M. Betheil ("Mr. Betheil").

113.     Mr. Betheil is an attorney with the law firm Pryor Cashman LLP ("Pryor Cashman").

114.     Pryor Cashman, through Mr. Betheil, has represented MAC for many years.

115.     Upon information and belief, MAC pays Pryor Cashman more than $35,000 per year in legal fees.

116.     Upon information and belief, over a period of years, Pryor Cashman has received hundreds of thousands of dollars in fees from MAC, and continues to be retained and paid by MAC.

117.     During the June 1, 2020 telephone call, Defendant terminated Plaintiff's employment.

118.     Plaintiff asked for the basis of the termination.

119.     Cote maliciously and mockingly replied that Plaintiff was being terminated as part of the "toxic work environment" that he had referenced in his protected complaints.

120.     Mr. Betheil told Plaintiff that he would receive a separation agreement.

121.     After Defendant unlawfully terminated Plaintiff's employment, Pryor Cashman sent Plaintiff a proposed "Agreement and Release."

122.     Plaintiff declined to sign the proposed "Agreement and Release."

123.     Defendant unlawfully retaliated against Plaintiff and unlawfully terminated his employment in retaliation for his protected complaints, in violation the FLSA, the Labor Law, the Revitalization Act, and the MAC Whistleblower Policy. *See, e.g.*, 29 U.S.C. § 215(a)(3);

-12-

Labor Law § 215; N.Y. CLS N-PCL § 715-b.

## COUNT ONE

### (FLSA)

124.    Plaintiff repeats and realleges every allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

125.    At all relevant times, Plaintiff was an individual employed by Defendant and was an "employee" of Defendant within the meaning of the FLSA, *see, e.g.*, 29 U.S.C. §§ 203(e), 203(g).

126.    At all relevant times, Defendant was an "employer" within the meaning of the FLSA and was Plaintiff's employer, *see, e.g.*, 29 U.S.C. § 203(d).

127.    Plaintiff was engaged in commerce and/or Defendant was an enterprise engaged in commerce within the meaning of the FLSA.

128.    The business activities of the Defendant, as described herein, are related and performed through unified operation or common control for a common business purpose and constitute an enterprise within the meaning of the FLSA, *see, e.g.*, 29 U.S.C. § 203(r).

129.    Defendant employs employees at its place of business in the activities of an enterprise engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

130.    The enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00.

131.    Therefore, the employees are employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, *see, e.g.*, 29 U.S.C. § 203(s)(l)(A).

132.    Plaintiff engaged in protected activity under the FLSA.

133.    Defendant unlawfully terminated Plaintiff's employment, in violation of the FLSA and its supporting regulations, *see, e.g.*, 29 U.S.C. § 215(a)(3).

134.    Defendant unlawfully retaliated against Plaintiff, in violation of the FLSA and its supporting regulations, *see, e.g.*, 29 U.S.C. § 215(a)(3).

135.    Defendant's unlawful conduct as alleged herein was willful within the meaning of the FLSA and in reckless disregard of the requirements of the FLSA, not in good faith, and lacking reasonable grounds for believing that its or their acts or omissions were not in violation of the FLSA, *see, e.g.,* 29 U.S.C. §§ 216(b), 255(a), 260.

136.    As a direct result of Defendant's unlawful conduct, Plaintiff has suffered, and continues to suffer, substantial monetary damages, including without limitation damages for lost wages, lost interest, and attorneys' fees and costs.

137.    As a direct result of Defendant's unlawful conduct, Plaintiff is entitled to recover damages from Defendant under the FLSA, including without limitation damages for lost wages, lost interest, and attorneys' fees and costs, *see, e.g.*, 29 U.S.C. §§ 215(a)(3), 216(b), 255(a).

138.    Plaintiff is entitled to recover liquidated damages from Defendant in an amount equal to one-hundred percent (100%) of Plaintiff's damages, under the FLSA, *see, e.g.*, 29 U.S.C. §§ 215(a)(3), 216(b), 255(a), 260.

-14-

139.    Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined, together with interest thereon, to compensate Plaintiff for Defendant's unlawful conduct and violation of the FLSA, *see, e.g.,* 29 U.S.C. §§ 215(a)(3), 216(b), 255(a).

140.    Plaintiff is further entitled to recover attorneys' fees and costs, as against Defendant, *see, e.g.*, 29 U.S.C. §§ 215(a)(3), 216(b), 255(a).

## COUNT TWO

### (New York Labor Law § 215)

141.    Plaintiff repeats and realleges every allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

142.    At all relevant times, Plaintiff was an "employee" of Defendant within the meaning of the Labor Law.

143.    At all relevant times, Defendant was an "employer" of Plaintiff within the meaning of the Labor Law.

144.    Plaintiff's compensation and benefits with Defendant were "wages" within the meaning of the Labor Law.

145.    At all relevant times, Plaintiff has been covered by the Labor Law and its supporting regulations, *see, e.g.,* Labor Law § 215.

146.    At all relevant times, the provisions of the Labor Law and its supporting regulations applied to Defendant and protected Plaintiff.

147.    Under Labor Law § 215(1)(a), "(a) No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any

employee (i) because such employee has made a complaint to his or her employer...that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner... or (vi) because such employee has otherwise exercised rights protected under this chapter...."

148.    Under Labor Law § 215(2)(a), "An employee may bring a civil action in a court of competent jurisdiction against any employer or persons alleged to have violated the provisions of this section.  The court shall have jurisdiction to restrain violations of this section, within two years after such violation, regardless of the dates of employment of the employee, and to order all appropriate relief, including enjoining the conduct of any person or employer; ordering payment of liquidated damages, costs and reasonable attorneys' fees to the employee by the person or entity in violation; and, where the person or entity in violation is an employer, ordering rehiring or reinstatement of the employee to his or her former position with restoration of seniority or an award of front pay in lieu of reinstatement, and an award of lost compensation and damages, costs and reasonable attorneys' fees.  Liquidated damages shall be calculated as an amount not more than twenty thousand dollars.  The court shall award liquidated damages to every employee aggrieved under this section, in addition to any other remedies permitted by this section."

149.    Defendant, by its conduct, violated Labor Law § 215.

150.    Defendant has willfully and without a good faith basis violated the Labor Law.

151.    Plaintiff is entitled to recover from Defendant, an award of lost compensation and damages, an award of front pay in lieu of reinstatement, liquidated damages, costs, reasonable attorneys' fees, and interest.

-16-

152.    Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined, together with interest thereon, to compensate Plaintiff for Defendant's unlawful conduct and violation of the Labor Law.

## COUNT THREE

### (The New York Non-Profit Revitalization Act of 2013)

153.    Plaintiff repeats and realleges every allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

154.    As noted above, on or about December 18, 2013, the Revitalization Act was enacted and Defendant issued the MAC Whistleblower Policy in response to that statute.

155.    Plaintiff in good faith reported action or suspected action taken by or within Defendant corporation that is illegal, fraudulent or in violation of any adopted policy of Defendant corporation.

156.    Plaintiff engaged in protected activity within the meaning of the Revitalization Act and the MAC Whistleblower Policy.

157.    MAC retaliated against Plaintiff in violation of the Revitalization Act and the MAC Whistleblower Policy.

158.    Plaintiff suffered termination of employment, intimidation, harassment, discrimination, other retaliation and adverse employment consequences, suffered economic and other damages, and suffered emotional distress, humiliation, pain and suffering, and damage to reputation.

159.    Defendant engaged in its retaliatory actions with wanton negligence and reckless indifference to Plaintiff's statutory rights.

160.    Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined, together with interest thereon, to compensate Plaintiff for Defendant's unlawful conduct and violation of the Revitalization Act.

## COUNT FOUR

### (Breach of Contract)

161.    Plaintiff repeats and realleges every allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

162.    A contract exists as between Plaintiff and Defendant.

163.    The contract is the MAC Whistleblower Policy.

164.    Plaintiff performed his contractual obligations to Defendant.

165.    Plaintiff reported improper conduct to Defendant.

166.    Defendant breached its contractual obligations to Plaintiff by, among other items, retaliating against him and terminating his employment in violation of the MAC Whistleblower Policy.

167.    Defendant violated the covenant of good faith and fair dealing.

168.    Defendant caused Plaintiff to suffer intimidation, harassment, discrimination, adverse employment action or other retaliation, and terminated Plaintiff's employment.

169.    By reason of the foregoing, Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined.

## COUNT FIVE

**(Promissory Estoppel)**

170.    Plaintiff repeats and realleges every allegation in all preceding paragraphs of this Complaint with the same force and effect as though fully set forth herein.

171.    Defendant made a clear and unambiguous promise to Plaintiff, that if he reported conduct described in the MAC Whistleblower Policy, including improper conduct, to Defendant, he would not suffer intimidation, harassment, discrimination, adverse employment action or other retaliation.

172.    Defendant acted or comported itself wrongfully or negligently, inducing reliance by Plaintiff who was entitled to rely on Defendant's promise and who changed his position to his detriment or prejudice.

173.    Plaintiff reasonably, foreseeably and justifiably relied on Defendant's promise.

174.    In reliance on Defendant's promise, Plaintiff reported conduct described in the MAC Whistleblower Policy, including improper conduct, to Defendant.

175.    Defendant broke its promise to Plaintiff, and Defendant caused Plaintiff to suffer intimidation, harassment, discrimination, adverse employment action or other retaliation, and terminated Plaintiff's employment.

176.    As a direct and proximate cause of the broken promise by Defendant to Plaintiff, and Plaintiff's justifiable reliance thereon, Defendant has caused Plaintiff to suffer substantial damages and other injury.

177.    By reason of the foregoing, Plaintiff has been damaged, and is entitled to a judgment against Defendant, in an amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment in favor of Plaintiff against Defendant, on all Counts, including as follows:

(A)     Award Plaintiff damages suffered by virtue of Defendant's violation of the FLSA, violation of the Labor Law, violation of the Revitalization Act, breach of contract and based on promissory estoppel, in an amount to be determined;

(B)     Award Plaintiff damages for lost earnings, lost wages, back pay, front pay, lost compensation, lost benefits, and other economic and actual damages, in an amount to be determined;

(C)     Award Plaintiff consequential damages, in an amount to be determined;

(D)     Award Plaintiff compensatory damages for, among other items, injury, impairment and damage to his good name and reputation, emotional distress, mental anguish, emotional pain, suffering, inconvenience, loss of enjoyment of life, lasting embarrassment and humiliation, and other pecuniary and nonpecuniary losses, in an amount to be determined;

(E)     Award Plaintiff liquidated damages, in an amount to be determined;

(F)     Award Plaintiff punitive damages and exemplary damages, in an amount to be determined;

(G)     Award Plaintiff the costs of this action, together with reasonable attorneys' fees, in an amount to be determined;

(H)     Award Plaintiff lost interest, in an amount to be determined;

(I)     Award Plaintiff any and all other damages and relief provided by the applicable statutes and applicable law, in an amount to be determined; and

(J)     Award Plaintiff such further damages and relief as may be just and proper, in an amount to be determined.

## <u>JURY DEMAND</u>

Plaintiff demands a jury trial for all issues triable.

Dated:  New York, New York
November 25, 2020

By:       GOLDBERG & FLIEGEL LLP
/s/ Kenneth A. Goldberg
Kenneth A. Goldberg
GOLDBERG & FLIEGEL LLP
488 Madison Avenue, #1120
New York, New York 10022
(212) 983-1077
Attorneys for the Plaintiff

-21-